22   149
d24   357

GEORGE L. BETZ, RESPONDENT, *v.* THE PEO-
PLE'S BUILDING LOAN AND SAVING ASSO-
CIATION, APPELLANT.

BUILDING AND LOAN ASSOCIATION—ACTION AGAINST — FOR WITH-
DRAWAL VALUE—LOSSES—EVIDENCE OF—RESOLUTION CONCERN-
ING—FINDING AS TO—WHEN ERRONEOUS — OBJECT OF BUILDING
AND LOAN ASSOCIATION — PROFITS — LOSSES — STOCKHOLDER —
WHEN ESTOPPED—BY VOTE OF PROXY.

*Building and Loan Association—Action Against—For Withdrawal
Value—Losses—Evidence of—Resolution Concerning—Finding as
to—When Erroneous.*

In an action against a building and loan association for the
withdrawal value of plaintiff's stock, where an exhibit intro-
duced by plaintiff shows that, at a stockholders' meeting held
prior to the giving of plaintiff's notice of withdrawal, a reso-
lution was passed, reciting the losses and depreciation of
property values suffered by the association and making a re-
duction therefor of a fixed percentage of the credits of each
member on the books of the association; that plaintiff's stock
was represented at such meeting, by proxy, and voted for the
resolution; and it further appears from defendant's evidence
that said resolution was immediately carried into effect by
the board of directors, a finding. "that the defendant at a
meeting held in January, 1896, did not distribute losses
against its stockholders; that it is not shown what losses, if
any, were sustained by the defendant during the preceding
year," is manifestly erroneous.

*Object of Building and Loan Association—Profits—Losses—Stock-
holder—When Estopped—By Vote of Proxy.*

The real object of a building and loan association being the
mutual and equitable benefit of all its members; and every

---

[1] *Stilwell* v. *Peoples' Building, etc. Co.*, 19 Utah, 357; 57 P. 14.
Affirmed.

member being entitled to share equally with every other member; in proportion to his holdings, in the profits of the enterprise, he is equally bound to stand his proportion of the expenses and losses incident to its management; and where a stockholder has, by proxy, voted for a resolution which resulted in charging his and other outstanding stock with a loss, he is effectually estopped from denying that the action of the directors, taken in obedience to the will of the stockholders, was warranted.

(Decided Dec. 2, 1899).

(Rehearing granted, Jan. 15, 1900).

Appeal from the Second District Court, Weber County. Hon. H. H. Rolapp, *Judge.*

Action to recover an amount claimed by plaintiff as due him upon withdrawal from defendant company. From a judgment for plaintiff, defandant appealed. *Reversed.*

*Valentine Gideon, Esq.*, for appellant.

In a mutual association, such as the appellant, the shareholders are compelled to share *pro rata* any loss sustained by the same, and the directors of a Building & Loan Association have the right to appraise or cause an appraisement to be made of its assets and charge all stockholders *pro rata* their proportion of the loss if any has been sustained. Endlich on Bldg. & Loan Assn., 2d edition, pp. 62–63–64 and cases there cited. Also see page 158 of same book. Thompson on Bldg. Assn., 2d edition, p. 286.

We contend that plaintiff's right to maintain this action must be based on the condition of the treasury of the association at the time the suit was filed, and if we are correct in that contention, any testimony as to the receipts subsequent to that date, is immaterial and should not be con-

sidered by the court. *Bearden, et al.* v. *People's Bldg., Loan & Savings Assn.,* 49 S. W. 64; *Englehardt* v. *Fifth Ward Permanent Dime Savings & Loan Assn.,* 148 N. Y. 381; *Brett* v. *The Monarch Investment Society,* L. R. 1 Q. B. Div. (1894) 267; *Barnard* v. *Thompson,* 1 Ch. Div. 374; *Texas Homestead Bldg. & Loan Assn.* v. *Kerr,* 13 S. W. 1020; *Pawlick* v. *Homestead,* 37 N. Y. Supp. 164.

*Messrs. Richards & Varian,* for respondent.

BARTCH, C. J.

The defendant is a building, loan and saving association, organized and existing under and by virtue of the the laws of New York. On or about December 1, 1890, it issued to the plaintiff a certificate of the series "A" of its capital stock, whereby he became the owner of twelve shares of the stock, each share being of the par value of $100. The certificate, among other things, provided that "In consideration of the entrance fee, together with agreements and full compliance with the terms and conditions printed on the back of this certificate, and the articles of association and by-laws adopted by the said association, all of which are hereby referred to and made a part of this contract, the said The People's Building, Loan and Savings Association agrees to pay said shareholder, or his heirs, executors, administrators or assigns, the sum of one hundred dollars for each of said shares at the end of five years from the date hereof, or at maturity."

Art. 14, sec. 2, of the amendments to the Articles of the Association, adopted December 2, 1893, provides: "Members holding certificates in Class A shall be entitled to withdraw the amount paid into the loan fund on the same, provided such certificates have been in force for

three years or more, and that they are in good standing on the books of the association at the time the application for withdrawal is made.    Members holding certificates in Class B and C shall be entitled to withdraw the amount paid into the loan fund on the same, provided they have been in force six months or more and that they are in good standing on the books of the association at the time the application for withdrawal is made.    Notice of 30 days may be required by the association from members wishing to withdraw the payments on such stock, and the time and manner of paying shall be the same as on stock at maturity provided that only one-half of the receipts of the association in any one month shall be applicable to the payment of such withdrawals."

In Sec. 3 of the same article it is provided: "Members withdrawing payments made on certificates in Class A, as provided in section 2 of this article, shall be entitled to receive an interest of 6 per cent. per annum, if they have been in force for more than three years and less than four years; if they have been in force for more than four years they shall be entitled to receive 7 per cent. per annum."

As alleged in the complaint and admitted in the answer, the plaintiff, in February, 1896, made application for withdrawal, and his claim not having been paid, on May 14, 1897, he brought suit by filing his complaint, wherein he asked for a judgment against the defendant in the sum of $1,035.53.    At the trial, on March 31, 1899, the court entered judgment in favor of plaintiff for $941.22, and thereupon the defendant appealed.

Among the assignments of error is one relating to the 12th finding of fact which reads: "That the defendant at a meeting held in January, 1896, did not distribute losses against its shareholders; that it is not shown what losses, if any, were sustained by the defendant during the preceding year."

To determine whether or not this finding was warranted, reference must be had to the proof. From plaintiff's exhibit "B," as shown by the transcript, it appears that on January 11, 1896, the association held its eighth annual meeting of the stockholders; that at that meeting there were represented either in person or by proxy, 10,175¾ shares of stock; that the whole number of shares in force at the close of the business on December 31, 1895, was 17,636¾ shares, and that at the same meeting a resolution was adopted as follows: "Whereas, it appears that by general shrinkage of land values throughout the country, and by numerous defaults in payment by shareholders of this association, and for other causes, that the fair market value of the assets of this association have depreciated 26 per cent. of their face value, and that in justice to each shareholder it is necessary that the book value of the stock of each member should be reduced according to the facts; now, therefore, it is resolved, that the Board of Directors of this association be, and they are, hereby directed to reduce the credits of each and every member upon the books of the association, in accordance with the above facts;" that the plaintiff was represented by proxy and his stock voted in favor of the resolution. It also appears from the exhibit that the assets of the association had greatly depreciated in value; that this caused the adoption of the resolution.; and that the design of the stockholders voting for the resolution, was to have all active stock charged with a proportionate share of the loss, including fully paid stock and stock for which notice of withdrawal had been given.

From the evidence offered by the defendant, and admitted by the court, it appears that the board of directors at once proceeded to carry the resolution into effect. On this point the witness Whitney, as shown by his deposi-

tion, testified: "A loss of 23 per cent. was charged against the plaintiff's stock by action of the board of directors acting under authority of the resolution heretofore referred to adopted by the stockholders at their annual meeting held on January 11th, 1896. This loss of 23 per cent. was charged against all stock outstanding at that time, including the plaintiff's."

Further reference to the evidence would seem useless. It is difficult to see how, in the face of such proof, which appears uncontradicted, the court could find there were no losses distributed against the stockholders. The finding in question is manifestly erroneous and must be attributed to an oversight of the court.

The respondent, having, by his proxy, voted for the resolution which resulted in charging his and other outstanding stock with a loss, is effectually estopped from denying that the action of the directors, taken in obedience to the will of the stockholders was warranted. He must be held to be bound by all the results which are the natural and necessary sequences of his own acts.

Moreover, the real object of an association like the one at bar, is, or ought to be the mutual and equitable benefit of all its members, and as every member is equally entitled, with every other member, to share equally and ratably in the profits of the enterprise, he is bound to contribute, in proportion to his interests in the concern, to the indebtedness of the corporation, and the expenses and losses incident to its management. Liability to such contribution is not affected by notice of withdrawal, although, as in other corporations, it is confined to the extent of his interest. "A member cannot, by withdrawing, evade his proportionate share in the expenses, losses, and debts of the association. The association has the right to deduct it from the amount otherwise coming to him upon legal

notice of withdrawal. And the society has the right to retain from withdrawing stockholders their proportion of probable loss sustained by reason of the purchase of real estate sold on its mortgage, which has depreciated, even before the loss has been finally determined by the sale of the real estate, where it is evident thare will be a loss. The society may have the property appraised by a committee, and fix the loss and assess the same on each share of stock *pro rata*." Endlich on Building Associations, Sec. 78.

The appellant also insists that the court erred in holding Sec. 2, Art. 10, of amendments to the Articles of Association, and Art. 37 of the by-laws null and void, as to the respondent, because the same impaired the obligation of the contract.

A similar question to the one here presented was discussed in the case of *Stillwell* v. *People's Building, Loan & Saving Ass'n*, 19 Utah 257, 57 Pac. Rep. 14, and, for an expression of our views on this point, we refer to that case which we hereby reaffirm.

Since the case must be reversed and a new trial granted, we shall refrain from expressing an opinion as to whether or not Sec. 2, and Art. 37, above referred to, were lawfully enacted, as the facts pertaining thereto may be made more clear by further proof.

Nor do we deem it important to discuss or decide any other question presented.

The case is reversed, with costs, and the cause remanded with directions to the lower court to grant a new trial.

MINER, J. and BASKIN, J., concur.